HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| G.R., by his next friend and stepmother, CHERYL WINNEY, and the WASHINGTON PROTECTION AND ADVOCACY SYSTEM, | Case No. C05-5420  RBL |
| Plaintiffs, | ORDER |
| v. | |
| STATE OF WASHINGTON DEPARTMENT OF SOCIAL AND HEALTH SERVICES, et al, | |
| Defendants. | |

THIS MATTER comes before the Court on cross motions for summary judgment.  Defendant, Washington Department of Social and Health Services ("DSHS"), moves for full summary judgment dismissing all claims of G.R.  Plaintiff moves for partial summary judgment on one central legal issue: whether notice of termination of benefits and right of appeal served on an individual who, as a result of mental disability, is incompetent to understand and act upon the notice violates the individual's due process rights.  Plaintiff contends that there remains an issue of material fact as to whether G.R. was competent at the time he received notice of termination of benefits and right to appeal.  Plaintiff also moves to amend the complaint to join additional plaintiffs who have mental disabilities and have received notice of termination of benefits from DSHS.  For the following reasons, the Defendant's Motion for Summary Judgment [Dkt. #42] is **GRANTED,** the Plaintiff's Motion for Partial Summary Judgment [Dkt. #46] is **DENIED** and the Motion to Amend the Complaint [Dkt. #63] is **GRANTED**.

## FACTUAL BACKGROUND

G.R. is a forty-three year old patient at Western State Hospital ("WSH"), a state-operated psychiatric facility located in Lakewood, Washington.  He has a long history of significant mental health issues, and currently is diagnosed with chronic schizophrenia with reported occasional visual and auditory hallucinations.  He was hospitalized at WSH in 1990 and again in 1991.  He has been an in-patient at the hospital continuously since July 2001.  He is a member of the certified class in *Allen, et al. v. Western State Hospital*, USDC Cause No. 99-5018 (RJB)RBL[1].  He does not have a full-time guardian.

G.R. was initially determined to be eligible for services offered through the Division of Developmental Disabilities in 1996 but because his needs were being served through the mental health system or through correctional facilities, no DDD services were necessary.  G.R. has made very limited use of DDD services since 1996.  He did receive a psychological evaluation in 2002 (paid for by DDD) and he has received case management through DDD since 1996.

In February 2005, G.R.'s treating psychiatrist at WSH sent a letter to DDD expressing his professional opinion that G.R. was not developmentally disabled and was therefore inappropriately using a bed on the Habilitative Mental Health (HMH) unit.  The HMH unit provides psychiatric treatment as well as vocational and other services that are particularized for persons with mild to moderate developmental disability.  All residents on the HMH unit are *Allen* class members since the criteria for membership in this class is that a person has both a mental illness and a developmental disability.

An eligibility review process was conducted by DDD and G.R. was determined not to meet the eligibility requirements for DDD services.  In accordance with internal policies and Wash. Rev. Code 71A.10.060, DDD kept G.R. apprised of the progression of his eligibility review.  In addition to hand delivering and mailing to him the original notice of intent to review his eligibility and the later notice of termination of his eligibility and his appeal rights, members of his treatment team met with G.R. three times to explain what was happening and to advise him of his right to appeal the termination decision.  Appropriate notices were hand-delivered to G.R. and mailed to him.  In addition, DDD kept WPAS fully

---

[1]The *Allen* class action was brought by Washington Protection and Advocacy System ("WPAS") on behalf of all persons who are clients of DSHS's Division of Developmental Disabilities ("DDD") and were committed to WSH after June 1, 1997.

informed of each step in the process of review of G.R.'s eligibility.[2]  Finally, G.R.'s step-mother, Cheryl Winney, was also notified by DDD of the intent to review G.R.'s eligibility, but due to a clerical error it failed to notify her of the decision to terminate his eligibility for DDD services.[3]  After DDD became aware of the error, it agreed to send new notices both to G.R. and Ms. Winney, and to initiate a new appeal period.

Defendant and plaintiff both acknowledge that a petition for limited guardianship of the person has been filed and that a guardian ad litem has been appointed for G.R.  An appeal of the termination of G.R.'s DDD benefits has been initiated and is currently pending.

<u>PROCEDURAL HISTORY</u>

This action was commenced by WPAS and Cheryl Winney on behalf of G.R. claiming that G.R.'s due process rights were violated because he was not competent to understand the notice and his right to appeal the decision.  The complaint alleges that there are others similarly situated to G.R. who have been denied

> "meaningful and adequate notice of termination of the DDD eligibility, services and benefits and their appeal rights, as they are not competent to understand such notices and give informed consent, they lack guardians, and the state is aware or should have been aware that they lacked capacity to understand the notices and give informed consent."  Complaint, Para 1.1.

A Temporary Restraining Order was granted ex-parte but later rescinded following a hearing for preliminary injunction, which motion was denied.  See Transcript of Hearing of 8/10/05 [Dkt. #41].

<u>DISCUSSION</u>

**I.    <u>Summary Judgment Standard</u>**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on

---

[2]As a member of the *Allen* class, G.R. has notices relevant to his access to department services sent to WPAS.

[3]RCW 71A.10.060 mandates that notice to DDD clients be provided to the client and to "at least one other person" in a hierarchy.  All clients are asked to identify significant others who they would like to have receive copies of notifications that are sent to the client, and notifications are subsequently sent to at least one person other than the client unless the client specifically objects to that procedure.

1    file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317,

2    324 (1986).  "The mere existence of a scintilla of evidence in support of the nonmoving party's position is

3    not sufficient." *Triton Energy Corp. v. Square D Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual

4    disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a

5    motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  In other

6    words, "summary judgment should be granted where the nonmoving party fails to offer evidence from

7    which a reasonable jury could return a verdict in its favor." *Triton Energy,* 68 F.3d at 1221.

8    .     A.     There is no genuine issue of material fact.

9        Clearly, the parties to this dispute are at odds over the question of G.R.'s competence to

10    understand the many notices he received concerning the termination of DDD benefits and his right to

11    appeal.  Defendant argues that G.R.'s treating professionals determined that G.R. was competent to

12    understand what he was being told.  Correctly, they point out that treating physicians are entitled to

13    deference in such matters where they exercise "professional judgment" in making the termination.  See

14    *Youngberg v. Romeo,* 457 U.S. 307 (1982).

15        In contrast, plaintiff alleges that where there is a question of competency, a formal competency

16    assessment is required before a health professional can reasonably conclude that a patient/client

17    understood the information being conveyed.  Because no formal assessment was conducted, plaintiff

18    argues that the treatment team did not exercise "professional judgment" when they determined G.R. was

19    competent at the moment he was advised of the termination of benefits and his right to appeal.

20        Because the Court concludes that the process ultimately afforded to G.R. meets constitutional

21    standards, even if G.R. was not competent to understand the information imparted to him, the factual

22    dispute over his competence is not material to the outcome of this case.

23        B.     The process used to give notice to G.R. and his designated representatives did not violate
            G.R.'s constitutional right of due process.

24

25        Given the current status of G.R.'s appeal, it is clear that he and his representatives have received

26    and acted upon every notice and right of appeal to which they are entitled.  DSHS has compensated for

27    the clerical error which deprived G.R.'s step-mother of initial notice of the termination of G.R.'s benefits

28    and his right to appeal.  A new notice was sent and a new deadline for appeal established.  Ms. Winney has

    obtained the appointment of a guardian and an appeal of the decision to terminate G.R.'s DDD benefits is

pending.  The procedures established by state law have been followed and the system has worked as it was intended.  The system of notifications required by RCW 71A.10.060 and followed by DSHS in the case of G.R. passes constitutional muster inasmuch as the notices were reasonably calculated to apprise G.R. of the decisions being made concerning DDD benefits and his right to appeal.  *See, Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950).

The Court rejects plaintiff's assertion that the state has the burden of initiating a guardianship proceeding where, as here, there is a next friend or significant other <u>and</u> a state-wide advocacy group designated to receive notice and authorized to act on G.R.'s behalf.  The fact that neither family member nor advocacy group owes a fiduciary duty toward G.R. does not diminish the effectiveness of the notice procedures for G.R., and persons similarly situated.  The absence of such a duty did not impede Ms. Winney's efforts on behalf of G.R., and the Court will not presume that others similarly situated are deterred from acting on behalf of their loved ones.

C.    <u>The notification procedures used by defendant did not discriminate against G.R. because of his disability</u>.

Plaintiff asserts that because G.R. is being denied his due process rights to adequate notice of DDD's eligibility termination and his right to appeal, he is being discriminated against in violation of the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131, et. seq. and section 504 of the Rehabilitation Act of 1973 (§ 504), 29 U.S.C. § 794a.  No other support for a discrimination claim is offered other than the alleged violation of G.R.'s due process rights.  The Court's determination that G.R.'s due process rights have not been violated, necessarily disposes of the claim of discrimination.

Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Partial Summary Judgment is **DENIED.**

II.    **Motion to Amend Complaint**

The Court is aware of the possibility that state benefits and services could be denied to a developmentally disabled citizen who: (a)  is not a member of the *Allen* class,(b) does not, therefore, have an advocacy group representing him/her, and (c) does not have family or friend to intervene.  That case would raise a material issue regarding the competency of such individual to understand and act upon the notices provided.  In that case, the appointment of a guardian may be necessary to fulfill the constitutional mandate set forth in *Mullane*.

1    WPAS has filed a motion to amend the complaint to add the claims of other disabled citizens who
2  have received notice of termination of DDD benefits.  WPAS is authorized by the Developmental
3  Disabilities and Bill of Rights Act (DD), 42 U.S.C. § 15041, et. seq. and the Protection and Advocacy for
4  Individuals with Mental Illness Act (PAIMI), 42 U.S.C. § 10801, et. seq., and regulations promulgated
5  thereto, to protect the legal and human rights of individuals with developmental disabilities and/or mental
6  illness.  In accordance with Congressional mandate, a state's protection and advocacy system is directed
7  to protect and advocate the rights of such individuals through activities to ensure the enforcement of the
8  Constitution and federal and state statutes.  The defendant concedes that WPAS has standing to bring
9  legal action on behalf of their constituents.  See *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1110
10  (9th Cir. 2003).  The Court is satisfied that the defendant is not prejudiced by the amended complaint and
11  that judicial economy justifies amendment rather than dismissal only to have a new case filed on behalf of
12  new plaintiffs.

13    The motion to amend the complaint is **GRANTED**.  The plaintiff shall file an amended complaint
14  with a caption that reflects the decision of the Court as stated in this Order.

15    **IT IS SO ORDERED.**

16    DATED this 5th day of January, 2006.

19    _____
20    RONALD B. LEIGHTON
    UNITED STATES DISTRICT JUDGE

ORDER
Page - 6